UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| MENTE GROUP LLC,<br><br>Plaintiff,<br><br>v.<br><br>ARNELL ENTERPRISES, INC,<br><br>Defendant. | Case No. 20-cv-07459-VKD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 52 |
|---|---|

Plaintiff and counter-defendant Mente Group LLC ("Mente") moves for an award of attorneys' fees and costs. Dkt. No. 52. Defendant and counter-claimant Arnell Enterprises, Inc. ("Arnell") opposes the motion.[1] Dkt. No. 54. The Court finds Mente's motion suitable for decision without oral argument. *See* Dkt. No. 58. For the reasons described below, the Court grants the motion for an award of fees and costs.

**I.   BACKGROUND**

This dispute arises out of an aircraft acquisition agreement between the parties. As part of the agreement, Mente arranged for the acquisition, on Arnell's behalf, of a Phenom 300E aircraft from third-party aircraft manufacturer Embraer. Dkt. No. 46 at 2. The parties agreed that Arnell would pay Mente for its services in connection with the acquisition. After Mente acquired the aircraft and title passed to Arnell, a dispute arose as to the amount Arnell owed Mente under the agreement. Dkt. No. 46 at 4-5.

On October 23, 2020, Mente filed a complaint asserting a single claim against Arnell for

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

1    breach of contract, invoking this Court's diversity jurisdiction. Dkt. No. 1. In its answer, Arnell
2    asserted several affirmative defenses and counterclaims for (1) breach of contract; (2) slander of
3    title; (3) suit to quiet title; and (4) declaratory relief. Dkt. No. 11.
4          The parties' agreement contained a "Choice of Law" subsection, with an integration
5    clause. Dkt. No. 45, Ex. 1. It states: "This Agreement is to be governed by and construed in
6    accordance with the laws of Texas, without regard to its conflict of law principles. . . . This
7    Agreement constitutes the entire agreement between MENTE and [ARNELL] with respect to the
8    subject matter contained herein and supersedes all prior agreements oral or written. This
9    Agreement may only be amended or modified by a written instrument signed by both parties." *Id.*
10         On January 3, 2022, the Court granted Mente's motion for partial summary judgment in
11   favor of Mente on: (1) Mente's claim against Arnell for breach of contract; (2) Arnell's
12   counterclaim for breach of contract; (3) Arnell's counterclaim for slander of title; and (4) Arnell's
13   affirmative defenses of failure to mitigate damages, assumption of risk, estoppel, statute of
14   limitations, set off, laches, waiver, unclean hands, and lack of notice (collectively, "defenses").
15   Dkt. No. 46 at 16. The Court found that Mente was entitled to recover actual damages from
16   Arnell in connection with Mente's breach of contract claim in the amount of $164,147.96. Dkt.
17   No. 46 at 15. The Court dismissed the remaining claims as moot on February 11, 2022 and
18   entered judgment. Dkt. Nos. 50, 51.
19         On February 25, 2022, Mente filed a motion seeking to recover $233,627.22 in attorneys'
20   fees and $6,127.10 in costs.

21   **II.    LEGAL STANDARD**

22         Where the merits of the underlying claim are governed by state law, a federal court applies
23   state law in deciding a motion for attorneys' fees. *Klein v. City of Laguna Beach*, 810 F.3d 693,
24   701-02 (9th Cir. 2016); *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1388-89 (9th
25   Cir. 1986) (explaining that, in diversity cases, both the availability and amount of attorneys' fees
26   are governed by state law). The parties agree Mente's request for attorneys' fees is governed by
27   Texas law. Dkt. No. 52 at 1; Dkt. No. 54 at 2.
28         Under Texas law, "[a] person may recover reasonable attorney's fees from an individual or

1  [corporation] . . . in addition to the amount of a valid claim and costs, if the claim is for. . . an oral
2  or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(b); Tex. Bus. Orgs. Code § 1.002(62)
3  (a corporation is one of several organizations from which a person may recover fees). To be
4  eligible for an award of attorneys' fees, "(1) the claimant must be represented by an attorney; (2)
5  the claimant must present the claim to the opposing party or to a duly authorized agent of the
6  opposing party; and (3) payment for the just amount owed must not have been tendered before the
7  expiration of the 30th day after the claim is presented." Tex. Civ. Prac. & Rem. Code § 38.002.
8  The party seeking an award of fees must be the prevailing party on a cause of action for which
9  attorney's fees are recoverable and must recover damages on the underlying claim. *Rohrmoos*
10 *Venture v. UTSW DVA Healthcare*, *LLP*, 578 S.W.3d 469, 484 (2019) (citing *Green Int'l, Inc. v.*
11 *Solis*, 951 S.W.2d 384, 390 (Tex. 1997)); *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015).
12 Attorneys' fees relating solely to a claim for which such fees are recoverable must be segregated
13 from unrecoverable fees, unless the services in question relate to recoverable and unrecoverable
14 claims that are intertwined. *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 313-14 (Tex.
15 2006).

### III. DISCUSSION

17 The parties do not dispute that Mente is eligible to recover attorneys' fees, that Mente was
18 the prevailing party, and that Mente recovered damages on its breach of contract claim. Instead,
19 the parties dispute the amount of fees that Mente should receive. To resolve this dispute, the
20 Court considers whether Mente properly segregated its fees in accordance with Texas law,
21 whether the hours worked and the rates charged by Mente's attorneys are reasonable, and whether
22 Mente's recovery should be reduced for any reason not accounted for in the lodestar calculation.

#### A. Segregation of Fees

24 The parties dispute whether Mente's attorneys properly segregated their billing entries for
25 work done on claims for which attorneys' fees are recoverable from those for which fees are
26 unrecoverable. Mente acknowledges that, under Texas law, it is not entitled to recover attorneys'
27 fees for work done that is solely attributable to Arnell's counterclaims of (a) slander of tile, (b)
28 quiet title, and (c) declaratory judgment. Dkt. No. 52 at 12. It argues that its fee request excludes

United States District Court
Northern District of California

the hours its attorneys spent working on these unrecoverable claims and includes 372.6 hours for work related to its successful breach of contract claim. *Id.* at n.4 and Dkt. No. 52-1, Exs. A & B. Mente also argues that, given the issues presented in this case, it is not legally required to segregate the work performed on the breach of contract claim from work performed on Arnell's contract-related counterclaim and affirmative defenses because this work was intertwined with and part of Mente's prosecution of its own breach of contract claim. Dkt. No. 57 at 5-6. Arnell responds that Mente has insufficiently discounted its fees to account for work attributable to Arnell's counterclaim for quiet title, which Arnell describes as "a major issue in the case." Dkt. No. 54 at 5-6. Arnell argues Mente's fees should be discounted by an additional 20%-30%. *Id.* at 6.

"If attorneys' fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I*, 212 S.W.3d at 313-14. On the other hand, "when discrete legal services advance both a recoverable and unrecoverable claim" and those claims are intertwined, they need not be segregated. *Id.* Attorneys need not keep separate records documenting the exact amount of time spent working on recoverable versus unrecoverable claims. *Id.*; *see also Lederer v. Lederer*, 561 S.W.3d 683, 701 (Tex. App. 2018). Segregation may be sufficiently established when "an attorney testifies that a given percentage of the drafting time would have been necessary even if the claim for which attorney's fees are unrecoverable had not been asserted." *Lederer*, 561 S.W.3d at 701. "It may often be impossible to state as a matter of law the extent to which certain claims can or cannot be segregated; the issue is more a mixed question of law and fact." *Tony Gullo Motors I*, 212 S.W.3d at 313.

Mente relies on declarations of its attorneys and their billing records to show that its request for attorneys' fees excludes work relating to the following: (1) drafting the portions of Mente's pleadings which relate only to Arnell's counterclaims for slander of tile, quiet title, and declaratory judgment; (2) researching these counterclaims; (3) depositions concerning only these counterclaims; (4) preparing Mente's motion for summary judgment on these counterclaims; and (5) resolving these counterclaims after the Court entered partial summary judgment. Dkt. No. 52

4

at 12; Dkt. No. 52-1, Ex. A ¶ 18. Arnell complains that Mente's evidentiary showing is insufficient because it has not provided documentation showing what billing entries were excluded, and it relies on its attorney's own assessment of the relative amount of work required for the quiet title counterclaim. Dkt. No. 54 at 5. Tellingly, Arnell does not identify any billing entries it believes *should* be excluded from the Court's calculations. Moreover, as Mente points out, Arnell's counterclaims for quiet title and for declaratory judgment were not at issue in the briefing on summary judgment but were resolved only after the Court granted summary judgment in Mente's favor on other matters. Dkt. No. 57 at 6; *see* Dkt. Nos. 49, 50. This supports Mente's argument that its attorneys' fees were primarily for work associated with its breach of contract claim and related counterclaims and affirmative defenses.

Mente's only claim against Arnell was for breach of contract. While Arnell asserted multiple counterclaims and affirmative defenses, Mente had to address one of those counterclaims and several defenses in order to successfully prosecute its affirmative breach of contract claim. *See* Dkt. No. 46. Because the issues were intertwined, Mente was not required to exclude work on these matters from its fee request.

The Court finds that Mente has properly segregated recoverable fees and that no further segregation or discounting is warranted to account for unrecoverable fees.

**B.    Reasonable Fees**

"The idea behind awarding attorney's fees in fee-shifting situations is to compensate the prevailing party generally for its reasonable losses resulting from the litigation process." *Rohrmoos Venture*, 578 S.W.3d at 487. "Because such fee awards are compensatory in nature, fee-shifting is not a mechanism for greatly improving an attorney's economic situation." *Id.* "Thus, only fees reasonable and necessary for the legal representation will be shifted to the non-prevailing party, and not necessarily the amount contracted for between the prevailing party and its attorney, as a client's agreement to a certain fee arrangement or obligation to pay a particular amount does not necessarily establish that fee as reasonable and necessary." *Id.* A court's analysis of a reasonable fee award starts with the lodestar, which the court calculates by multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate.

5

*Rohrmoos Venture*, 578 S.W.3d at 498.

### 1.     Reasonable Rates

The parties dispute whether the hourly rates for the work performed by Mente's attorneys are reasonable.  Mente seeks the following hourly rates for the attorneys and paralegals on this case:[2]

| Reed Smith LLP | |
|---|---|
| Mark L. Johansen: | $725.00 per hour |
| Maytak Chin: | $766.49 per hour |
| Steve Smith: | $584.30 per hour |
| Shikendra Rhea (Legal Assistant): | $295 per hour |
| John Hendricks (Legal Assistant): | $335 per hour |
| **Sloan & Roberts, PLLC** | |
| Kenneth W. Sloan: | $425 per hour |

Mr. Johansen is a partner with the law firm Reed Smith LLP ("Reed Smith").  He has been licensed to practice law in Texas since 1987.  His practice focuses on complex commercial litigation matters.  Dkt. No. 52-1 Ex. A, ¶ 1.  Ms. Chin is also a partner with Reed Smith.  She has been licensed to practice law in California since 2012.  Her practice also focuses on commercial litigation matters.  *Id.* ¶ 3.  Mr. Smith is an associate with Reed Smith.  He has been licensed to practice law in Texas since 2016 and focuses on commercial litigation.  *Id.* ¶ 4.  Ms. Rhea and Mr. Hendricks are both licensed paralegals with Reed Smith and each has more than five years of experience.  *Id.* ¶ 6.

Mr. Sloan is a partner with the law firm of Sloan & Roberts, PLLC ("Sloan Roberts").  He has been licensed to practice law in Texas since 1986.  He practices complex commercial litigation, corporate law, and real estate.  *Id.* at Ex B. ¶ 2.

Mente says that the rates requested for Mr. Johansen and Mr. Smith represent a

---

[2] Mente explains that these rates have been averaged over the course of the representation, as each time keeper's rate increased over time.

6

1  "substantial discount" from the standard rates Reed Smith ordinarily charges for their time. Dkt.
2  No. 52 at 7-8. Mente argues these rates are less than or the same as the usual and customary rates
3  for the Dallas and San Francisco markets. *Id.* at 7. Arnell argues that the rates sought for Mente's
4  attorneys are excessive as compared with San Francisco market rates. Dkt. No. 54 at 8-9. Arnell
5  says that the relevant benchmark is $455 per hour—which is purportedly the average rate charged
6  for *contract* attorneys in the San Francisco Bay Area during some unspecified period of time. *Id.*
7  at 8. Arnell suggests that Mente could have simply retained a contract attorney or attorneys to
8  perform the work performed by Mr. Johansen, Ms. Chin, and Mr. Smith. *Id.* In addition, Arnell
9  suggests that the rates requested by another law firm, Robin Kaplan LLP for representing an
10 insurance company client in a different matter in the Central District of California are an
11 appropriate benchmark for assessing a reasonable hourly rate in this case. *Id.* at 8-9.

12 The rates Mente claims for the work performed by its attorneys and paralegals are well-
13 supported. In addition to Mr. Johansen's declaration and the billing records, Mente cites several
14 cases in this district approving fees for similar work performed during approximately the same
15 period of time at hourly rates consistent with those requested. *See* Dkt. No. 57 at 7-8. The
16 discounted rates for Mr. Johansen and Mr. Smith are commensurate with, or in some cases less
17 than, rates awarded to attorneys practicing with large law firms in this district. Arnell's anecdotal
18 evidence of hourly rates charged by another firm representing an insurance company client in a
19 single matter in a different district is not persuasive. Similarly, the Court does not consider the
20 hourly rates charged by contract attorneys—who typically work on a temporary basis on specific
21 projects supervised by another attorney—to be relevant benchmarks for the work performed by
22 Mente's attorneys in this case.

23 For these reasons, the Court concludes that the hourly rates Mente claims are reasonable.

24 **2.  Reasonable Hours**

25 The parties disagree about the total number of hours for which Mente should recover fees
26 for its attorneys' work. Mente seeks compensation for a total of 372.6 hours its attorneys and
27 paralegals worked on this case. Dkt. No. 52 at 8. This amount is comprised of 352.1 hours for
28 work performed by Reed Smith and 20.5 hours for work performed by Sloan Roberts. *Id.* at 8.

Arnell argues that the number of hours claimed includes unnecessary work and duplicative billing. Dkt. No. 54 at 6.

When the party moving for fees has met its burden of providing sufficient evidence to support the number of hours and rate claimed, the calculation presumptively "reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Rohrmoos Venture*, 578 S.W.3d at 499; *see also El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010); *Blum v. Stenson*, 465 U.S. 886, 897 (1984). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture*, 578 S.W.3d at 498.

Under Texas law, the lodestar calculation "subsumes" the following factors that may bear on the fees a party should be awarded: "the time and labor required," "the novelty and difficulty of the questions involved," "the skill required to perform the legal service properly," "the fee customarily charged in the locality for similar legal services," "the amount involved," "the experience, reputation, and ability of the lawyer or lawyers performing the services," "whether the fee is fixed or contingent on results obtained," "the uncertainty of collection before the legal services have been rendered," and "results obtained." *Id.* at 500 (citing *Arthur Andersen Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). "These considerations therefore may not be used to enhance or reduce the base calculation to the extent that they are already reflected in the reasonable hours worked and reasonable hourly rate." *Id.* at 501. Therefore, if a party seeks either an enhancement or reduction of the lodestar amount, "it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id.*

### a.   Settlement Offer

Before Mente filed its motion for partial summary judgment, the parties participated in a settlement conference on June 7, 2021. The conference did not produce a settlement. Dkt. No. 54 at 3-4. However, in mid-August 2021, Mente offered to settle its claim for $215,000, which

8

Arnell rejected.[3] *Id.* at 4. Then, on August 18, 2021, Arnell made a final settlement offer of $170,000, which Mente apparently rejected. This offer was greater than the damages Mente sought for its breach of contract claim, but did not include an amount sufficient to cover Mente's attorneys' fees and costs.

Arnell argues that its August 18 offer was "eminently reasonable" and that the Court should take Mente's failure to accept the offer into account in calculating the reasonable number of hours. *Id.* at 3-4. Specifically, Arnell argues that Mente should not be permitted to recover approximately $145,000 in fees incurred after August 18, 2021 because Mente rejected Arnell's offer to settle. Mente acknowledges that the bulk of the work on its motion for partial summary judgment took place after the parties failed to negotiate a settlement, but Mente points out that because the parties were at "an impasse in settlement negotiations," Mente had to prepare its case and file its motion. Dkt. No. 57 at 1.

Arnell relies heavily on *Lohman v. Duryea Borough*, 574 F.3d 163 (3d Cir. 2009), for the proposition that a fee award should be reduced to account for a party's conduct in settlement negotiations. *Lohman* is not helpful. In that case, the plaintiff brought several claims relating to the termination of his employment. *Id.* at 164-65. The only claims to survive summary judgment were three first amendment retaliation claims. *Id.* at 165. After the trial began, the defendants made various settlement offers, including one for $75,000. *Id.* Ultimately, the jury reached a verdict in favor of the plaintiff and awarded him $12,205 in lost wages and nominal damages. *Id.* The plaintiff then moved for an award of attorneys' fees and costs in the amount of $112,883.73. *Id.* Applying the "degree of success" analysis in *Hensley v. Eckerhart*, 461 U.S. 424, (1983), the district court awarded $30,000 in attorneys' fees and $4,251.77 in costs. *Id.* The district court observed: "The fact that Plaintiff prevailed at trial may not be entirely indicative of counsel's

---

[3] In their briefing, both parties disclose information concerning their settlement conference and their settlement communications. Pursuant to this district's ADR Local Rule 7-4, "the contents of any written settlement conference statements, anything that was said, any position taken, and any view of the merits of the case expressed by any participant in connection with any settlement conference" is treated as "confidential information" under the rule and may not be disclosed unless an exception applies. *See* ADR L.R. 7-4(a), (b). The Court assumes, from their briefing, that both parties agree to the disclosures of confidential information each has made.

success. Therefore, the Court will consider the settlement negotiations in its determination of Plaintiff's attorney's fee award." *Id.* at 165-66. With respect to the plaintiff's success, the district court further noted that "[o]f the six (6) claims in the Complaint, only the First Amendment claims went to trial. Of the claims that were presented to the jury, only one (1) claim returned a verdict in favor of the Plaintiff. . . . Plaintiff's counsel may have achieved a much greater level of success if Plaintiff had settled the case." *Id.* at 166.

Here, by contrast, Mente was successful on its only asserted claim and obtained 100% of the actual damages sought. While Arnell's August 18 offer was slightly higher than the actual damages of $164,147.96 awarded, it was not sufficient to make Mente whole for the attorneys' fees and costs Mente had incurred as of that date. Dkt. No. 57 at 3. Nothing in the record supports Arnell's contention that Mente acted unreasonably in declining to accept Arnell's August 18 settlement offer.

In addition, the Court notes that Mente took steps to resolve its dispute with Arnell before filing an action. Section 38.002 of the Texas Civil Practice and Remedies Code requires that a plaintiff "present" its claim to the defendant before filing suit to be eligible to recover attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code § 38.002. As Mente correctly notes, the "purpose of the presentment requirement is to allow a defendant thirty days to pay a claim without facing liability for attorneys' fees." Dkt. No. 57 at 4; *see also, e.g., Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). In accord with this requirement, Mente presented Arnell with a demand letter prior to filing its claim. Dkt. No. 57 at 2. Arnell overlooks the fact that *it* rejected *Mente's* offer to settle the case for $215,000—an amount that would have covered Mente's actual damages and approximately $50,000 in attorneys' fees. Had Arnell paid Mente's claim before the action was filed, or accepted Mente's later offer of $215,000, it could have avoided paying some or all of the attorneys' fees Mente now seeks.

Finally, following Arnell's final settlement offer of $170,000 on August 18, 2021, nothing in the record suggests that Mente unnecessarily delayed resolution of the dispute. Indeed, on August 30, 2021, *Arnell* filed a motion to extend fact discovery by thirty days. Dkt. No. 35. And again, on October 29, 2021, *Arnell* filed a motion for an extension of time to file its response to

Mente's motion for partial summary judgment. Dkt. No. 38.

Accordingly, the Court concludes that nothing about Mente's conduct in settlement negotiations justifies limiting the number of hours for which Mente may seek attorneys' fees.

### b. Duplicative Billing Entries

The parties dispute the extent to which Mente may recover fees for the work of Messrs. Johansen and Smith. In Arnell's estimation, the work completed by these two attorneys can be split into five distinct buckets: (1) "preparation and filing of the Complaint and Rule 26 disclosures," (2) "drafting and responding to discovery," (3) "preparing for and attend[ing] the June 7, 2021 Settlement Conference," (4) "preparing for and taking Roger Burnell's oral deposition and defending Jim Lewis' deposition," and (5) "preparing and arguing MENTE's Motion for Summary Judgment." Arnell says it does not have a "significant objection" to Mente's recovery for work performed in connection with the first three tasks, but it "takes strong exception" to the number of hours claimed for work Messrs. Johansen and Smith both performed on Mente's motion for partial summary judgment and in taking and defending depositions.

Texas follows the Supreme Court's guidance in *Hensley*: "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. . . . Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *El Apple I*, 370 S.W.3d at 762 (Tex. 2012) (quoting *Hensley*, 461 U.S. at 434)). "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Davis v. Perry*, 991 F. Supp. 2d 809, 835 (W.D. Tex. 2014) (citation omitted).

### i. Mente's Motion for Partial Summary Judgment

Arnell argues that the work performed by Messrs. Johansen and Smith on Mente's motion for summary judgment was duplicative. According to Arnell, the billing records reflect that both attorneys spent "a significant portion, if not all, day [sic] jointly reviewing and drafting the Motion for Summary Judgment" from September 20 through September 29, 2021, from October 11

through October 19, 2021, and from November 18 through November 23, 2021—an effort Arnell says "lacks credibility." Dkt. No. 54 at 6-7. Arnell makes a similar assertion regarding Messrs. Johansen and Smith's preparation for the Court's hearing on Mente's motion for summary judgment. *Id.* at 7.

Mente disputes Arnell's characterization of its billing records, explaining that Mr. Johansen and Mr. Smith performed different work with respect to preparing Mente's motion papers and that the records actually reflect that each spent only a modest amount of time working on those papers during the periods in question. Dkt. No. 57 at 11.

The Court has reviewed the billing entries provided by Mente for the particular time periods that Arnell asserts contain duplicative entries. While some entries are not especially descriptive ("Confer regarding Motion for Summary Judgment . . . ," 10/08/21), none of the entries strike the Court as duplicative. For example, on October 11, 2021 Mr. Smith's entry states: "Work on Motion for Partial Summary Judgment and Brief in Support . . . ." Dkt. No. 52-1, Ex. A-1 at 74. Mr. Johansen's entry for the same day states: "Review and revise Motion for Summary Judgment . . . ." *Id.* As Arnell concedes, Mr. Smith drafted the motion papers and Mr. Johansen reviewed and revised them. Dkt. No. 54 at 6-7. This allocation of work—i.e. a junior attorney with a lower billing rate drafts the papers which are then reviewed and revised by a senior attorney with a higher billing rate—is a fairly typical practice and one that may be an efficient and cost-effective means to prepare motion papers, as it limits the amount of time the senior, more expensive attorney spends working on the papers.

The Court is not persuaded that the billing records for the disputed time periods show unnecessary duplication of effort.

### ii.     Mente's Deposition of Roger Burnell

Arnell also takes issue with the hours claimed for Messrs. Johansen and Smith's preparation for the deposition of Roger Burnell, Arnell's corporate representative. Arnell argues that Mente's requested hours should be "significantly discounted" because the attorneys' work was duplicative. Dkt. No. 54 at 7.

Mente responds that Arnell is partially responsible for the amount of time Mente was

required to devote to this deposition. *See* Dkt. No. 52 at 9. According to Mente, Arnell cancelled Mr. Burnell's deposition the night before it was scheduled to occur, and as a result, Mente's attorneys had to repeat some of their preparations when the deposition was rescheduled several weeks later. *Id.* Mente additionally points out that "[i]t is common in commercial litigation cases for an associate (here, Mr. Smith) with in-depth knowledge of documents produced in discovery to take an active role in deposition preparation and to meet with the partner (Mr. Johansen) to further develop deposition strategy and fine tune potential deposition topics, exhibits, and questions." Dkt. No. 57 at 10. This allocation of tasks between junior and senior attorneys is similar to the allocation Mente's attorneys used in preparing the motion for partial summary judgment, and the Court is not persuaded that the attorneys' efforts were unnecessarily duplicative.

The Court finds Mente's explanations sufficient to justify the number of hours worked by Messrs. Johansen and Smith in preparing for depositions.

### c. Attorney Chin's Hours

Arnell next objects to Mente recovering fees for the 29.5 hours of work performed by Ms. Chin, a partner based in San Francisco. *See* Dkt. No. 54 at 7-8. Arnell generally argues that Ms. Chin served only as the local sponsor for Messrs. Johansen and Smith's pro hac vice admissions, and that any work she performed on the case was unnecessary and duplicative of the work done by Messrs. Johansen and Smith. *Id.* In response, Mente describes the specific tasks Ms. Chin performed and argues they were not duplicative. *See* Dkt. No. 57 at 12.

Having reviewed Ms. Chin's billing entries, the Court agrees with Mente and cannot conclude that Ms. Chin's work was duplicative or unnecessary. While the Court notes that many tasks performed by Ms. Chin were "reviewing" or "revising" the work performed by Messrs. Johansen and Smith, this alone does not require the Court to exclude the time spent on these tasks. Other work performed by Ms. Chin included analysis of court documents and attendance at the Court's initial case management conference. This work is consistent with Ms. Chin's role as local counsel and not unnecessarily duplicative of other attorneys' work.

The Court is not persuaded that Ms. Chin's hours must be excluded from the calculation of

reasonable hours.

### d. Paralegal Rhea Hours

Arnell's final objection is to the work performed by paralegal Shikendra Rhea. According to Mente's records, Ms. Rhea performed 15.6 hours of work on this case. Dkt. No. 52 at 8. Arnell argues that because Mente has not established that Ms. Rhea performed tasks an attorney would perform that it has not met its burden and cannot recover her fees. Dkt. No. 54 at 8. In reply, Mente lists the work she performed and argues that this is not "clerical work." Dkt. No. 57 at 12.

An award of attorney's fees may include a paralegal's time to the extent that the work performed "has traditionally been done by any attorney." *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App. 2005). To recover attorney's fees for work performed by paralegals or other legal assistants, "the evidence must establish: (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant." *Id.* (quoting *Multi–Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 570 (Tex. App. 1990)); *see also Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 702 (Tex. App. 1988).

Mente has met its burden to show that Ms. Rhea was qualified to perform the work she performed as a "licensed paralegal . . . for more than five years [with] extensive experience in commercial litigation matters." Dkt. No. 52-1, Ex. A ¶ 6. Mente has also shown that she "performed services under attorney supervision." *Id.* Moreover, the record reflects that Ms. Rhea performed work that attorneys typically perform, including coordinating document production, reviewing documents produced by Arnell, preparing draft deposition notices, and compiling exhibits for motions. Dkt. No. 57 at 12. This work cannot reasonably be characterized as clerical.

Having reviewed Ms. Rhea's billing entries, the Court is satisfied that fees for her time are recoverable.

14

### 3.     Downward Adjustment

Mente and Arnell disagree about whether any other reduction of the lodestar amount is necessary. Citing the Texas Disciplinary Rules of Professional Conduct and *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), Arnell argues that the following four considerations merit a downward adjustment: (1) "most significantly, the extremely high hourly rate charged for Mente attorneys and paralegals is well above the customary and normal rates," (2) "[t]here was nothing novel or difficult in the issues presented such that an attorney with specialized knowledge or experience was required," (3) "[t]here was no other representation that Reed Smith was precluded from taking based upon its representation," and (4) "Attorney Johansen acknowledged a 'long standing professional relationship' with Mente." Dkt. No. 54 at 9. Mente responds that that no downward adjustment of the lodestar is permitted or required on the basis of these considerations.

As discussed above, *see* Section III.B.2, when the party moving for fees has met its burden of providing sufficient evidence to support the number of hours and rate claimed, the lodestar calculation is presumptively reasonable. *Rohrmoos Venture*, 578 S.W.3d at 499. The base lodestar calculation "subsumes": "the time and labor required," "the novelty and difficulty of the questions involved," "the skill required to perform the legal service properly," "the fee customarily charged in the locality for similar legal services," "the amount involved," "the experience, reputation, and ability of the lawyer or lawyers performing the services," "whether the fee is fixed or contingent on results obtained," "the uncertainty of collection before the legal services have been rendered," and "results obtained." *Id.* at 500 (citing *Arthur Andersen*, 945 S.W.2d at 818). "These considerations therefore may not be used to enhance or reduce the base calculation to the extent that they are already reflected in the reasonable hours worked and reasonable hourly rate." *Id.* at 501. If a party seeks either an enhancement or reduction of the lodestar amount, "it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id.*

The Court agrees with Mente that a downward adjustment is not warranted. First, as to Mente's "extremely high hourly rate," the Court has already addressed the hourly rates sought by

15

Mente and has found them reasonable. Second, with respect to the novelty of the issues, while Arnell may be correct that nothing about this case was particularly novel, that factor is already part of the lodestar accounting. As the Texas Supreme Court and the United States Supreme Court have noted, "the base lodestar calculation appropriately accounts for the novelty and complexity of a case because those considerations are presumably 'fully reflected in the number of billable hours recorded by counsel.'" *Rohrmoos Venture*, 578 S.W.3d at 500 (citing *Perdue*, 559 U.S. at 553). Third, Arnell's observation that Reed Smith was not precluded from taking other work during its representation of Mente is already subsumed in the lodestar calculation. The rate that an attorney sets for work on a case naturally reflects the demand for the attorney's time. Furthermore, as Mente notes, if anything, the fact that Messrs. Johansen and Smith worked on Mente's matter at a discounted rate tends to suggest that an *enhancement* of the lodestar value might be warranted, as these attorneys may have been unable to take on other work at their higher non-discounted rates due to their representation of Mente. *See* Dkt. No. 57 at 14. Fourth, Arnell points to no authority supporting its argument that the long-standing relationship between Mr. Johansen and Mente warrants a downward adjustment of the lodestar. If anything, the long-standing relationship may have been the reason Reed Smith charged Mente a discounted rate for its attorneys' time.

In consideration of the parties' arguments, the Court finds that no further downward adjustment of the lodestar amount is warranted.

### C. Costs

Mente seeks to recover costs from Arnell in the amount of $6,127.10. These costs include the initial filing fee and deposition costs. *See* Dkt. No. 52-1. Arnell does not object to Mente's request for costs. *See* Dkt. No. 54.

The Court has authority to award costs for fees of the clerk to the prevailing party. Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920(1). Prevailing parties are also entitled to recover deposition costs when "at the time it was taken, [the] deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery." *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991); 28 U.S.C. § 1920(2). Copies of deposition transcripts obtained for use during trial or for trial preparation may also be included in taxable costs. *Id.*

Mente's deposition costs were related to the depositions of Roger Burnell, Arnell's CEO, Brian Proctor, Mente's President and Chief Executive Officer, and Jim Lewis, Mente's Senior Managing Director. Each of these individuals had direct knowledge of the facts and circumstances at issue in this case, and it was reasonable for Mente and Arnell to obtain their deposition testimony in preparation for trial. *See* Dkt. No. 46.

Thus, Mente's unopposed request to recover costs associated with these depositions, as well as its filing costs, is granted.

### IV. CONCLUSION

For the foregoing reasons, the Court awards Mente $233,627.22 in attorneys' fees and $6,127.10 in costs.

**IT IS SO ORDERED.**

Dated: September 22, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge